IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| OPTIMA OIL & GAS COMPANY, LLC, | ) | |
| a Colorado Limited Liability Company, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case Number CIV-09-145-C |
| | ) | |
| MEWBOURNE OIL COMPANY, a Texas | ) | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff filed a complaint on February 5, 2009, asserting claims of abuse of process, fraud, constructive fraud, tortious interference with contractual or business relations, and tortious interference with prospective business advantage. Plaintiff also sought punitive damages. Defendant filed the present motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

### BACKGROUND

Plaintiff, a Colorado limited liability company, and Defendant, a Texas corporation, are both oil companies that owned oil and gas leasehold rights underlying a tract of land designated as Section 1, Township 20 North, Range 24 West, in Ellis County, State of Oklahoma (the Unit). Plaintiff owned 85% of the leasehold rights, while Defendant owned 15%. In February 2006, a dispute arose with respect to developing the Unit. According to Plaintiff, it informed Defendant that, as the majority leasehold owner, it intended to operate the Unit, was taking steps to develop it, and was actively marketing the prospect. Plaintiff

contends that Defendant then indicated that it would await Plaintiff's decision regarding development of the Unit.  However, in June 2006, Defendant filed an application with the Oklahoma Corporation Commission seeking to force pool Plaintiff's rights and interests within the Unit.  This application was placed on the uncontested docket and was set for hearing.  Defendant sent notice of the application and upcoming hearing to Plaintiff at its Oklahoma City office but, due to problems at that particular office, Plaintiff did not receive actual notice of the hearing until after it occurred.

Subsequently, Plaintiff filed a Motion to Stay Issuance of Order and to Reopen. Before ruling on this motion, the Corporation Commission entered Pooling Order No. 528230 granting Defendant's pooling application.  Plaintiff then filed a motion to vacate, requesting a full hearing on the pooling application.  Both motions were ultimately denied by the Corporation Commission.  Plaintiff then appealed to the Oklahoma Court of Civil Appeals, which found that the Corporation Commission erred in denying Plaintiff's motions, reversing and remanding for further proceedings.  While Plaintiff's appeals were pending, Defendant filed a Motion for Extension of Time to Commence Operations under the pooling order and was ultimately granted a one-year extension, by which time Plaintiff's leases in the Unit had expired.

Plaintiff subsequently filed a complaint on June 25, 2008, alleging claims of tortious interference with contractual rights and prospective business relations, fraud, and abuse of process.  The complaint was voluntarily dismissed on August 19, 2008, and the present complaint was filed on February 5, 2009.

## STANDARD OF REVIEW

Whenever a party submits and the court considers matters outside the pleadings in connection with a Rule 12(b)(6) motion, it must be converted into a motion for summary judgment. See Fed. R. Civ. P. 12(d); Lowe v. Town of Fairland, Okla., 143 F.3d 1378, 1381 (10th Cir. 1998). Generally, when converting Rule 12(b)(6) motions, the parties must be given notice and an opportunity to present all material relevant to a summary judgment motion. See Nichols v. United States, 796 F.2d 361, 364 (10th Cir. 1986).

> However, failure to give notice is not reversible error if a party does not attempt to exclude the supporting documents, but files its own sworn affidavits in response. Where a party has responded in kind to the movant's attempt to convert the motion, that party cannot later claim unfair surprise.

Id. (internal citations omitted).

Because the Court considered material other than the pleadings in reaching a decision in the present case on Defendant's claims regarding standing, real party in interest, and the statute of limitations, those portions of Defendant's motion must be converted into one for summary judgment. Defendant attached to its motion an affidavit from a landman, along with copies of oil and gas leases and certificates from the Oklahoma and Colorado Secretaries of State regarding the status of a number of different corporations. In response, Plaintiff did not attempt to exclude the documents, but instead attached, among other things, an affidavit, letters sent between the companies, and briefs filed by the parties in prior proceedings. Additionally, Plaintiff's response indicates an awareness that Defendant's

motion may be treated as one for summary judgment with respect to those claims. Accordingly, the Court finds that formal notice is unnecessary.

A motion for summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c).  Material facts are those that may affect the outcome of the litigation under applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine only if it is such that a reasonable jury could find in favor of the nonmoving party.   Id.   The moving party bears the burden of demonstrating the lack of a genuine issue about any material facts. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970).  Once this burden is met, the nonmoving party must then respond and introduce specific facts demonstrating a genuine issue of material fact. Fed. R. Civ. P. 56(e)(2). When deciding a motion for summary judgment, the court may only consider admissible evidence and must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'" Scott v. Harris, 550 U.S. 372, 378 (2007) (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam)); Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995).

The Supreme Court noted that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  The Court went on to explain that, in this

situation, there could be no genuine issue of material fact because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

However, the portions of Defendant's motion that challenge the legal sufficiency of Counts I through V of Plaintiff's complaint will be analyzed under the standard applicable to Rule 12(b)(6) motions to dismiss.[1]  In considering such a motion, the Court must accept the complaint as true and must construe all facts in the light most favorable to Plaintiff. Seamons v. Snow, 84 F.3d 1226, 1231-32 (10th Cir. 1996).  Consistent the liberal pleading standards of Fed. R. Civ. P. 8(a)[2], Plaintiff need not plead detailed factual allegations, but the face of the complaint must indicate a plausible right to relief that is not simply speculative. James River Ins. Co. v. Ground Down Eng'g, Inc., 540 F.3d 1270, 1274 (11th Cir. 2008).  A complaint containing only conclusory allegations without any factual support will not survive a motion to dismiss. Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981). "[O]nce a claim has been stated adequately, it may be supported by showing any set

---

[1] Defendant did not attach material outside the pleadings in support of its motion regarding the substance of Plaintiff's claims.  Additionally, Plaintiff's response indicates that, as a result, it viewed and treated Defendant's attack on Counts I through V as a motion to dismiss.  Because both parties appear to have treated those portions of Defendant's motion as a motion to dismiss, the Court will analyze it under the applicable Rule 12(b)(6) standard.

[2] Fed. R. Civ. P. 8(a) provides that "A pleading that states a claim for relief must contain . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief." This has been interpreted to require the complaint to provide sufficient notice to the defendant regarding what the plaintiff is claiming and the grounds upon which the claim is made. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-55 (2007).

of facts consistent with the allegations in the complaint." <u>Bell Atlantic Corp.</u>, 550 U.S. at 563.

**DISCUSSION**

**A.  Motion for Summary Judgment**

    *1.  Claims Regarding Standing and Real Party in Interest*

Initially, Defendant claims that Plaintiff lacks standing to bring the present complaint and that it is not the real party in interest.  According to Defendant, there are two separate entities named Optima Oil.  One is a Colorado limited liability company (Colorado Optima) and the other is an Oklahoma business (Oklahoma Optima).  Based on its title search, Defendant contends that Oklahoma Optima is the entity with an ownership interest in the Unit.  The present Plaintiff, however, is Colorado Optima, which lacks standing and is not the real party in interest.  Plaintiff disagrees, arguing that Defendant is barred from raising these claims based on the doctrine of issue preclusion.  According to Plaintiff, these issues were decided by the Oklahoma Court of Civil Appeals when it reversed the decisions of the Corporation Commission in 2008, and therefore they cannot be raised in the present proceeding.

The Court must look to Oklahoma law to determine whether issue preclusion applies to bar the present lawsuit.  <u>See</u> <u>Matsushita Elec. Indus. Co., Ltd. v. Epstein</u>, 516 U.S. 367, 373 (1996).  In Oklahoma, there are four requirements for issue preclusion:

> [T]he issue sought to be precluded must be the same as that involved in the prior judicial proceeding; the issue was litigated in the prior action; the issue

6

was in fact actually determined in the prior proceeding; and the determination
of that issue was necessary to support the judgment in the prior proceeding.

Franklin v. Thompson, 981 F.2d 1168, 1170 (10th Cir. 1992) (internal citations and quotation

marks omitted).

Additionally, and fatal to Plaintiff's claim, "[t]hose who rely on a judgment for its

issue-preclusive force . . . are duty-bound to produce – as proof of its terms, effect and

validity – the *entire* judgment roll for the case which culminated in the decision invoked as

a bar to relitigation." Salazar v. City of Okla. City, 1999 OK 20, ¶ 11, 976 P.2d 1056, 1061

(footnote omitted). Oklahoma statute defines the judgment roll as "the petition, the process,

return, the pleadings subsequent thereto, reports, verdicts, orders, judgments, and all material

acts and proceedings of the court . . . ." 12 Okla. Stat. § 32.1; see also id. Because Plaintiff

failed to provide the Court with the entire judgment roll from the earlier proceeding, the

Court is unable to determine which issues were litigated and actually determined by the

Court of Civil Appeals. Accordingly, issue preclusion does not apply in the present situation.

Standing is an issue to be resolved by the Court rather than the jury. Chrisman v.

C.I.R., 82 F.3d 371, 372 (10th Cir. 1996). However, the parties have not presented sufficient

evidence to permit the Court to make a determination at this time. Defendant contends that

there are two different companies named Optima Oil & Gas Company, one in Colorado and

one in Oklahoma. Defendant has submitted an affidavit from its landman detailing what he

discovered during his title search, along with various copies (some of which are impossible

to read) of a number of oil and gas leases listing "Optima Oil & Gas Company," with an

Oklahoma address, as lessee.  In addition, Defendant has attached a certificate from the Oklahoma Secretary of State indicating that a company named "Optima Oil & Gas Company" may have been formed at one time in Oklahoma.  However, the certificate simply provides "I FURTHER CERTIFY that OPTIMA OIL & GAS COMPANY, LLC ,24th July, 2000."  See Def.'s Mot., Dkt. No. 9, Ex. 1 at 24).  This language is extremely unclear and vague, and the Court finds that this evidence, standing alone, cannot support a determination regarding Plaintiff's standing or status as real party in interest.  Defendant's motion on this issue will therefore be denied.

      *2. Statute of Limitations*

      Next, Defendant contends that the present action is barred by the statute of limitations. According to Defendant, the statutory period began to run on June 1, 2006, when Defendant filed its pooling application with the Oklahoma Corporation Commission.  Because Plaintiff alleges tort claims, the applicable statute of limitations is two years, which means that any action must have been filed by May 31, 2008.  Plaintiff disputes this contention, arguing instead that the statute of limitations did not begin to run until June 27, 2006, the date of the Corporation Commission hearing on Defendant's pooling application.

      Plaintiff's claims are all governed by a two-year statute of limitations.  12 Okla. Stat. § 95(3), *as amended by* 2008 Okla. Sess. Laws Serv. ch. 99 (West).  The limitations period "does not begin to run until the point in time a plaintiff can successfully prove the elements of a tort claim."  Lee v. Phillips & Lomax Agency, Inc., 2000 OK 65, ¶ 8, 11 P.3d 632, 634. Plaintiff's complaint indicates that all of its claims are premised on allegedly misleading and

deceptive statements made by Defendant during the Corporation Commission hearing. Accordingly, the Court finds that the limitations period did not begin to run on Plaintiff's claims until the hearing on June 27, 2006.  Accordingly, Plaintiff's original suit was timely filed on June 25, 2008.

Defendant argues that Oklahoma's savings statute, 12 Okla. Stat. § 100, does not render the present complaint timely.  According to Defendant, Plaintiff did not domesticate in the State of Oklahoma prior to filing its original complaint, and therefore the original action was never validly commenced.  Additionally, because Plaintiff is now domesticated in the State of Oklahoma, Defendant argues that it is not substantially the same party as the plaintiff in the original action.  Finally, Defendant contends that the savings statute cannot permit Plaintiff to allege new claims in a second action.

The Oklahoma savings statute provides:

> If any action is commenced within due time, and a judgment thereon for the plaintiff is reversed, or if the plaintiff fail in such action otherwise than upon the merits, the plaintiff, or, if he should die, and the cause of action survive, his representatives may commence a new action within one (1) year after the reversal or failure although the time limit for commencing the action shall have expired before the new action is filed.

12 Okla. Stat. § 100.  According to the Oklahoma Pleading Code, "[a] civil action is commenced by filing a petition with the court."  12 Okla. Stat. § 2003.  Plaintiff satisfied this requirement on June 25, 2008, one day before the statute of limitations expired.  The fact that Plaintiff was not domesticated in Oklahoma when it filed its original petition is unimportant. Even if lack of domestication meant that Plaintiff's claim would ultimately be dismissed as

9

improperly filed, its original action was still timely commenced.  Similarly, Oklahoma courts have applied the savings statute in cases where the original action was dismissed for improper venue, C & C Tile Co., Inc. v. Independent School Dist. No. 7 of Tulsa County, 1972 OK 137, 503 P.2d 554 (superseded by statute on other grounds, 12 Okla. Stat. § 2003), and lack of jurisdiction, Edmison v. Crutsinger, 1933 OK 422, 25 P.2d 1103; Meshek v. Cordes, 1933 OK 345, 22 P.2d 921.  In such instances, the original action was clearly not maintainable, and yet the court found the savings statute applied because the action was timely commenced and dismissed otherwise than on the merits.  A similar result should attain here.

     In order for the present lawsuit to be permissible under the savings statute, the current Plaintiff must be substantially the same as the plaintiff in the prior action.  C&C Tile Co., , 1972 OK 137, ¶ 23, 503 P.2d at 559.  "It is not essential that the party plaintiff in both cases be the same eo nomine but that they be essentially the same." Id.  This is interpreted to mean that the plaintiff must be "suing in the same right." Haught v. Cont'l Oil Co., 1943 OK 159, ¶ 17, 136 P.2d 691, 693.  Plaintiff in the present suit is "suing in the same right" as was the plaintiff in the prior action.  Although Plaintiff has now been domesticated in the State of Oklahoma, such an act simply changes its legal status within the state.  Plaintiff is still the same corporation, and is still "suing in the same right" as in the original action.

     Finally, in order for the savings statute to apply, Plaintiff must not be alleging new causes of action.  Plaintiff's original complaint alleged claims of tortious interference with contractual rights and prospective business and economic relations, fraud, and abuse of

10

process.  In the present action, Plaintiff has alleged claims for abuse of process, fraud, constructive fraud, tortious interference with contractual or business relations, and tortious interference with prospective business advantage.  Defendant contends that the savings statute does not apply to render timely Plaintiff's claims for constructive fraud, tortious interference with contractual or business relations, and tortious interference with prospective business advantage.

Oklahoma follows the transactional approach in defining what constitutes a cause of action.  Chandler v. Denton, 1987 OK 38, ¶ 12, 741 P.2d 855, 862-63.  "The operative event that underlies a party's claim delineates the parameters of his cause of action.  This conceptual approach ensures that litigants will be able to assert different theories of liability without violating the purposes of the statute of limitations."  Id. at 863 (footnotes omitted). Accordingly, "[o]nly a single cause of action can be predicated on the same set of facts, but different remedies and theories of liability may be pressed in support of each claim alleged." Fleet v. Sanguine, Ltd., 1993 OK 76, ¶ 15, 854 P.2d 892, 901 (emphasis and footnotes omitted).  After a careful review of both complaints filed by Plaintiff, the Court finds that the claims alleged in the second complaint do not constitute a new cause of action.  Rather, they arise out of the same set of operative facts as pleaded in Plaintiff's original complaint. Accordingly, application of the savings statute renders timely all claims asserted in the present suit.

11

**B. Motion to Dismiss**

*1. Abuse of Process*

"'The elements of abuse of process are (1) the improper use of the court's process (2) primarily for an ulterior purpose (3) with resulting damage to the plaintiff asserting the misuse.'" Nat'l Ass'n of Prof'l Baseball Leagues, Inc. v. Very Minor Leagues, Inc., 223 F.3d 1143, 1152 (10th Cir. 2000) (quoting Bank of Okla., N.A. v. Portis, 1997 OK CIV APP 32, ¶ 27, 942 P.2d 249, 255) (emphasis omitted). "The key issue in any abuse of process claim is whether a party has attempted to use the legal system 'to obtain a result not lawfully warranted or properly attainable.'" FLSmidth A/S v. Jeffco, LLC, No. 08-CV-0215-CVE-SAJ, 2008 WL 4426992, at *6 (N.D. Okla. Sept. 25, 2008) (quoting Neil v. Pa. Life Ins. Co., 1970 OK 172, 474 P.2d 961, 965).

The Court finds that Plaintiff has properly stated a claim for abuse of process. After filing its pooling application, Defendant allegedly misrepresented the nature of the application as undisputed and deliberately misled the Oklahoma Corporation Commission, causing it to enter an erroneous order. Plaintiff alleges that Defendant did this in an effort to deprive Plaintiff of its leasehold interests and rights in the Unit. Plaintiff has alleged damages as a result. Defendant's motion will therefore be denied with respect to this claim.

*2. Fraud*

"In Oklahoma, the elements of actionable fraud are (1) the defendant made a material representation that was false, (2) he knew when he made the representation that it was false, (3) he made it with the intention that it should be acted upon by plaintiff, and (4) plaintiff

acted in reliance upon it and thereby suffered detriment." Stehm v. Nordam Group, Inc., 2007 OK CIV APP 94, ¶ 13, 170 P.3d 546, 549.   Plaintiffs must plead fraud with particularity. Fed. R. Civ. P. 9(b).  This means that "a complaint must 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'" Schwartz v. Celestial Seasonings, Inc., 124 F.3d 1246, 1252 (10th Cir. 1997) (quoting Lawrence Nat'l Bank v. Edmonds (In re Edmonds), 924 F.2d 176, 180 (10th Cir. 1991)).  Defendant contends that Plaintiff has not set forth specific allegations regarding who made what statements and when they were made.

The Court disagrees.  Plaintiff's complaint states that, during conversations in February 2006 between the parties, Plaintiff informed Defendant that it intended to operate the Unit and was taking steps to do so.  Plaintiff also stated that it would oppose any effort by Defendant to drill within the area.  Next, Plaintiff contends that, in June 2006, Defendant filed a pooling application with the Oklahoma Corporation Commission seeking to force pool Plaintiff's rights.  Defendant presented the application as uncontested.  On June 27, 2006, Defendant's witness, Chuck Falkenstein, allegedly presented the matter as uncontested and withheld from the judge that Plaintiff had previously informed Defendant that it would oppose Defendant's effort to force pool the Unit.  Finally, Plaintiff states that, in January 2007, while Plaintiff was appealing the Corporation Commission's decision to the Oklahoma Court of Civil Appeals, Defendant filed a motion requesting an extension of time to commence operations under the pooling agreement.  At a hearing on this motion, Defendant falsely represented to the ALJ that the extension would preserve the status quo, when in fact

13

the extension caused Optima to lose all of its leasehold rights in the Unit.  The Court finds that these allegations are sufficiently specific with respect to who made what statements and when they were made to satisfy Rule 9(b), and this portion of Defendant's motion will therefore be denied.

   *3.  Constructive Fraud*

   Constructive fraud is defined in Oklahoma as "any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him."  15 Okla. Stat. § 59.  The necessary duty "may arise if a party selectively discloses facts that create a false impression." Specialty Beverages, L.L.C. v. Pabst Brewing Co., 537 F.3d 1165, 1181 (10th Cir. 2008).  Although there is no general duty to disclose, "'[o]ne conveying a false impression by the disclosure of some facts and the concealment of others is guilty of fraud even though his statement is true as far as it goes, since concealment is in effect a false representation that what is disclosed is the whole truth.'"  Id. (quoting Roberts Ranch Co. v. Exxon Corp., 43 F. Supp. 2d 1252, 1259 n.12 (W.D. Okla. 1997)).

   The Court finds that Plaintiff has sufficiently stated a claim for constructive fraud. Although Defendant had no duty to disclose any facts to Plaintiff regarding its intent to file a pooling application, once it spoke on the subject, a duty arose for Defendant to tell the full truth.  Accepting Plaintiff's allegations as true, Defendant informed Plaintiff that it would await Plaintiff's decision regarding the Unit prior to filing any pooling application and that any dispute between the parties would be resolved openly before the Corporation

Commission.   Additionally, when speaking before the Commission on its pooling application, Defendant had a duty to fully and accurately inform the Commission of Plaintiff's expressed intent to oppose any such application.  Such material omissions by Defendant could amount to constructive fraud, and therefore its motion to dismiss must be denied on this claim.

> *4. Tortious Interference with Contractual or Business Relations*

"To prove a claim of tortious interference with business relations, one must show (1) a business or contractual right that was interfered with, (2) interference that was malicious and wrongful and was neither justified, privileged nor excusable, and (3) damage caused by interference." Champagne Metals v. Ken-Mac Metals, Inc., 458 F.3d 1073, 1093 (10th Cir. 2006).  "Malice" in this context is "an unreasonable and wrongful act done intentionally, without just cause or excuse."  Tuffy's, Inc. v. City of Okla. City, 2009 OK 4, ¶ 14, No. 105705, 2009 WL 146684, at *3.

Defendant contends that Plaintiff failed to allege the existence of a contract, but this argument overlooks the fact that a lease is the center of Plaintiff's claim.  In essence, Plaintiff contends that it held 85% of the oil and gas leasehold rights in the Unit.  If drilling did not commence pursuant to these contracts within a specified period of time, the leases would expire.  As a result of Defendant's pooling application, the subsequent protracted litigation, and Defendant's request for a one-year extension in time, Plaintiff contends that its leases in fact expired.  Accepting the complaint as true, the Court finds that Plaintiff has sufficiently

pleaded a claim for tortious interference with contractual or business relations, and Defendant's motion must therefore be denied.

     *5.  Tortious Interference with Prospective Business Advantage*

To show tortious interference with prospective business advantage, Plaintiff must show "'the existence of a valid business relation or expectancy, knowledge of the relationship or expectancy on the part of the interferer, an intentional interference inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the party whose relationship has been disrupted.'" Wilspec Techs., Inc. v. Dunan Holding Group Co. Ltd., No. CIV-06-818-L, 2008 WL 2557760, at *3 (W.D. Okla. June 20, 2008) (quoting Boyle Servs., Inc. v. Dewberry Design Group, Inc., 2001 OK CIV APP 63, ¶ 6, 24 P.3d 878, 880).  To show the existence of a valid business relationship or expectancy, "'the plaintiff must show either that prospective economic advantage would have been achieved had it not been for such interference or that there was, in view of all the circumstances, a reasonable assurance thereof.'" Crystal Gas Co. v. Okla. Natural Gas Co., 1974 OK 34, ¶ 25, 529 P.2d 987, 990 (quoting 45 Am. Jur. 2d Interference §  6).

The Court finds that Plaintiff has sufficiently stated a claim for tortious interference with prospective business advantage.  According to Plaintiff, it was in the process of developing drilling prospects in the Unit and was actively promoting and marketing its interests for sale to third parties when Defendant filed its pooling application in June 2006. Plaintiff alleges that, as a result of discussions between the parties regarding Defendant's interest in developing the Unit, Defendant was aware of Plaintiff's negotiations with third

parties.  Plaintiff contends that Defendant's actions caused extensive delay, thereby resulting in Plaintiff losing its leases in the Unit.  Accepting these allegations as true, the Court finds that Plaintiff's claim must proceed.

### CONCLUSION

For the reasons stated more fully herein, Defendant's Motion to Dismiss (Dkt. No. 9) is DENIED.

IT IS SO ORDERED this 22nd day of June, 2009.

ROBIN J. CAUTHRON
United States District Judge